# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39436**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dylan R. MESSER**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 May 2019

————————————

*Military Judge:* Brian D. Teter.

*Approved sentence:* Bad-conduct discharge, confinement for 120 days, and a reprimand. Sentence adjudged 25 January 2018 by GCM convened at Sheppard Air Force Base, Texas.

*For Appellant:* Major Dustin J. Weisman, USAF; Captain David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Amanda L.K. Linares, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Judge LEWIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

LEWIS, Judge:

A military judge convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one charge and one specification of

wrongful possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The military judge sentenced Appellant to a bad-conduct discharge, six months of confinement, forfeiture of $1,000.00 pay per month for six months, and a reprimand. The convening authority reduced the confinement to 120 days per the PTA, disapproved the adjudged forfeitures, and approved the remainder of the sentence. Additionally, the convening authority waived mandatory forfeitures until Appellant's confinement release for the benefit of Appellant's spouse.

Appellant raises one issue on appeal of whether the military judge erred in admitting testimony from a Prosecution witness during sentencing.[1] We find no prejudicial error, and we affirm the findings and sentence.

## I. BACKGROUND

In early February 2017, Appellant began a conversation with a user named "Jessica" utilizing the Kik Messenger (Kik) application on his cell phone. Appellant and "Jessica" initially met in an anonymous Internet-based chat room, but moved their conversation to Kik so they could exchange pictures and videos. The user profile picture on "Jessica's" Kik account depicted two young females. Once on Kik, Appellant asked "Jessica" to "[s]how me that little body." In response, "Jessica" sent Appellant a video, but the video was not of "Jessica."[2] Instead, the video was known child pornography created in 2014 and identified that same year by the National Center for Missing and Exploited Children (NCMEC). NCMEC describes the 2014 video as part of the "Ice Cream Shirt" series. The video depicts a 9-year-old girl masturbating.

Appellant received the video, viewed it, and stored it on his cell phone. In response, he sent "Jessica" a picture of his erect penis along with a description of the sexually explicit things he wanted to do to her. The next day, Appellant responded to a message from "Jessica" and said that he wished he had another video of her to watch. When "Jessica" indicated her parents were home, Appellant suggested that she go to the bathroom and "[g]et naked and play with [herself] again" and then send him the video or pictures. One month later,

---

[1] We permitted Appellant to submit his assignment of error sealed as the pleading contained personal and sensitive material. A.F. CT. CRIM. APP. R. 5.3(b)(2).

[2] The record of trial does not disclose further information about "Jessica" such as age or gender. We refer to "Jessica" using female pronouns consistent with the stipulation of fact in Appellant's case.

Appellant's technical school roommate discovered the child pornography video on Appellant's cell phone and reported it to authorities.

During sentencing, the Prosecution offered two civilian law enforcement video interviews of the 9-year-old girl from the Ice Cream Shirt series. The civilian investigation discovered that the girl had taken sexually explicit videos of herself in 2014, apparently without coaching from any other person, and uploaded them using her older sister's Vine[3] account.

In her first interview with civilian law enforcement, the girl did not admit to making the videos or posting them to Vine. Before her second interview, the girl admitted to her parents that she took and posted the videos. In the second interview with civilian law enforcement, the girl is crying, visibly upset, and distraught. The Prosecution offered the two interviews as evidence of victim impact in aggravation under Rule for Courts-Martial (R.C.M.) 1001(b)(4)[4] arguing that the girl's emotional reaction was her realization that the videos had been discovered on the Internet and are being "seen by people."

The Defense objected, *inter alia,* on the grounds that the interviews were hearsay, improper aggravation evidence, and failed the Mil. R. Evid. 403 balancing test. After a lengthy discussion, the military judge told the parties that he was inclined to sustain the hearsay objection.

The Prosecution then elected to call Detective CH, who monitored the interviews of the girl, to have him testify about the girl's emotional reaction without eliciting hearsay. Trial defense counsel sought clarification from the military judge on his proposed evidentiary ruling and was interrupted when Detective CH entered the courtroom to begin his testimony. After Detective CH was sworn in, the military judge noted that he would allow the witness to testify to the Government's proffer about the girl's reaction during the interview. Detective CH testified during direct examination:

> Q. [Trial Counsel:] So did she have any type of emotional reaction when the videos were being discussed with her?
>
> A. [Detective CH:] Initially she was not speaking about the videos. She didn't want to. She kind of felt uncomfortable about

---

[3] According to Prosecution Exhibit 5, an investigation report from the Ice Cream Shirt series, Vine is a mobile service that "lets users create and share short looping videos."

[4] This reference and all other references to the Rules for Courts-Martial and the Military Rules of Evidence in this opinion are to the 2016 edition of the Manual for Courts-Martial, which applied during Appellant's trial and clemency. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM),* pt. II, III.

talking about the videos, but later on she did. She did have a reaction to the videos.

Q. What kind of reaction did she have?

A. She was very upset. She was distraught. I guess she was kind of realizing what she did. It was taking a toll on her, and she was really upset about it.

Q. How did you know she was upset?

A. She was crying, emotional about it. And she still even didn't even want to talk about what she did. She was kind of really embarrassed about doing the videos.

During cross-examination, Detective CH testified that he did not follow up with the girl about why she was feeling distraught.

After Detective CH's testimony, the military judge sustained the Defense's objection to the two interviews under Mil. R. Evid. 403 based on cumulativeness with Prosecution Exhibit 5 and the testimony of Detective CH. The military judge then ruled that he would consider the testimony of Detective CH without reference to R.C.M. 1001(b)(4) or the Mil. R. Evid. 403 balancing test.

On appeal, Appellant asserts that the military judge erred when he considered Detective CH's testimony about the girl's emotional reaction under R.C.M. 1001(b)(4) and Mil. R. Evid. 403. The Government urges us to find the military judge did not abuse his discretion or alternatively, if we find error, that it did not materially prejudice Appellant's substantial rights.

## II. DISCUSSION

### A. Law

We review a military judge's decision to admit or exclude sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (citing *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J.

341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

R.C.M. 1001(b)(4) allows the Government to admit evidence in aggravation "directly relating to or resulting from the offenses of which the accused has been found guilty." "Evidence in aggravation includes, but is not limited to, evidence of . . . social, psychological, and medical impact on or cost to any person . . . who was the victim of an offense committed by the accused . . . ." *Id.* Furthermore, the Government may present evidence "directly related to the offense . . . so that the circumstances surrounding that offense or its repercussions may be understood by the sentencing authority." *United States v. Irwin*, 42 M.J. 479, 483 (C.A.A.F. 1995) (quoting *United States v. Vickers*, 13 M.J. 403, 406 (C.M.A. 1982)).

Aggravation evidence is subject to Mil. R. Evid. 403, and, even if relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Ashby*, 68 M.J. 108, 120 (C.A.A.F. 2009) (quoting Mil. R. Evid. 403).

Where a military judge conducts a proper balancing test under Mil. R. Evid. 403, an appellate court will not overturn the ruling absent "a clear abuse of discretion." *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)). However, we give military judges "less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing." *Manns*, 54 M.J. at 166 (citation omitted).

We consider four factors when determining whether an error had a substantial influence on the sentence: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (citation omitted).

**B. Analysis**

As a threshold matter, we find the Defense preserved an objection to the portion of Detective CH's testimony about the 9-year-old girl's emotional reaction. We also note the record of trial does not disclose why the military judge found the testimony to be a matter in aggravation under R.C.M. 1001(b)(4). Additionally, the military judge did not announce that he conducted a Mil. R. Evid. 403 balancing test before ruling. Still, we need not resolve whether the military judge abused his discretion because the alleged error did not substantially influence the adjudged sentence under the four-part test from *Barker*. *See id.*

Here, the Government's case was strong. The stipulation of fact included several attachments including (1) the graphic and disturbing video Appellant received, viewed, and stored on his cell phone; (2) his Kik messages with "Jessica," which showed his affinity and desire to have her create similar videos for him after he viewed the one she sent him; and (3) a thorough investigative report from civilian law enforcement about how the video Appellant possessed initially made its way onto the Internet. We also find that Appellant's conduct was aggravated by the fact that the video was discovered by Appellant's roommate, a fellow Airman in technical school training, in their on-base dormitory room.

The Defense's case was of above-average strength for an Airman with only 14 months of service. While Appellant did not call any witnesses to testify, he did have a character letter from his military training leader, Staff Sergeant (SSgt) CC, who described Appellant's exceptional professionalism as detail chief, while awaiting trial, in monitoring 20 Airmen awaiting training or pending departure. SSgt CC described Appellant as a great leader capable of great achievements.

Most critically, we find the testimony of Detective CH about the girl's emotional reaction to lack materiality under the circumstances. It is not surprising that a young child would react with tears, embarrassment, and a general state of distress when interviewed by civilian law enforcement as described in the investigative report admitted as Prosecution Exhibit 5.

We similarly find the quality of the evidence of the girl's emotional reaction to be unremarkable as evidence of victim impact of Appellant's offense. Detective CH observed the girl's interviews. He provided brief testimony in this military judge-alone trial. This portion of his testimony, a mere three questions and answers, occupies 14 lines on a single page in the transcript. Compared to the actual video interviews which were not admitted into evidence, Detective CH provided a short and somewhat speculative interpretation of the girl's emotional reaction.

Finally, the Prosecution never referenced the girl's emotional reactions during sentencing argument. The Prosecution argued a dishonorable discharge was appropriate punishment, but the military judge adjudged a bad-conduct discharge. Further, both sides agreed in their respective sentencing arguments that six months of confinement, the amount adjudged, was appropriate. Appellant also received the benefit of his PTA, which further reduced his confinement to 120 days. We conclude that if the military judge did abuse his discretion in admitting the evidence, it did not have a substantial influence on Appellant's sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court